1  VORTEX LAW GROUP
   Safora Nowrouzi (SBN 320878)
2  *safora@vortexlawgroup.com*
   21550 Oxnard Street, Suite 110
3  Woodland Hills, CA 91367
   T. 818.475.6818
4  F. 310.975.1251

5  Attorney for PLAINTIFF
   SCOTT A. JOHNSTON
6

7              IN THE UNITED STATES DISTRICT COURT

8                        EASTERN DISTRICT

9

10    SCOTT A. JOHNSTON, an individual;        Case No: 2:23-cv-00650-DAD-DMC

11                                             **VERIFIED FIRST AMENDED COMPLAINT**
                   PLAINTIFF,                  **FOR:**
12                                                1. **PROMISSORY ESTOPPEL**
13         vs.                                    2. **VIOLATION OF BUSINESS &**
                                                     **PROFESSIONS CODE § 17200**
14    SPECIALIZED   LOAN  SERVICING LLC, a        3. **DECLARATORY RELIEF**
      Delaware limited liability company; AFFINIA  4. **QUIET TITLE CCP § 761.020**
15    DEFAULT   SERVICES,  LLC, a Washington
      limited liability company; and DOES 1-20,
16    inclusive;                                 Complaint Filed: March 9, 2023
                                                 Trial Date:
17

18                 DEFENDANTS.

19

20

21

22

23

24

25

26

27

28

COMES NOW PLAINTIFF SCOTT A. JOHNSTON pleads as follows:

**PARTIES**

1.      At all times relevant herein, SCOTT A. JOHNSTON (hereafter referred to as "PLAINTIFF") has an ownership interest in the property, located at 240 Williams Avenue, Red Bluff, CA 96080 (the "PROPERTY" or "HOME"). At all relevant times, PLAINTIFF has used the PROPERTY as his primary residence. At all times relevant, PLAINTIFF was a borrower, as defined by Civil Code § 2920.5, and PLAINTIFF'S PROPERTY was owner-occupied, as defined by Civil Code § 2924.15.

2.      DEFENDANT SPECIALIZED LOAN SERVICING LLC ("SLS") is, and at all times mentioned herein, was a Delaware limited liability company doing business in the County of Tehama, State of California.

3.      DEFENDANT AFFINIA DEFAULT SERVICES, LLC ("AFFINIA") is, and at all times mentioned herein, was a Washington limited liability company doing business in the County of Tehama, State of California.

4.      The true names and capacities of DEFENDANTS named herein as DOES 1 through 20 are unknown to PLAINTIFF at this time, who therefore sues said DEFENDANTS by such fictitious names. PLAINTIFF will seek leave of Court to amend this Complaint to insert the true names and capacities of such fictitiously named DEFENDANTS when they have been ascertained. PLAINTIFF is informed and believes and thereupon alleges that such DEFENDANTS are liable for the injuries to PLAINTIFF hereinafter alleged.

5.      PLAINTIFF is informed and believes and thereupon alleges that the DEFENDANTS named as DOES 1 through 20 are individuals and/or unknown entities that reside and/or conduct business within this judicial district, and claiming an interest in the PROPERTY.

6.      PLAINTIFF is informed and believes, and on the basis of that information and belief alleges, that at all times mentioned in this Complaint, DEFENDANTS Does 1 through 10 were the agents and employees of their co-defendants, and in doing the things alleged in this Complaint were acting within the course and scope of that agency and employment.

**VERIFIED FIRST AMENDED COMPLAINT**

7.  PLAINTIFF is informed and believes, and on the basis of that information and belief alleges, that at all times mentioned in this Complaint, DEFENDANTS Does 11 through 20 are persons or entities whose capacities are unknown to PLAINTIFF at this time.

8.  PLAINTIFF will amend this Complaint to allege DEFENDANTS Does 1-20's true names and capacities when ascertained.

9.  PLAINTIFF is informed and believes and thereon alleges that each of the DEFENDANTS herein gave consent to, ratified, and authorized the acts alleged herein to each of the remaining DEFENDANTS, including those fictitiously named DEFENDANTS.

10. PLAINTIFF is informed and believes and thereon alleges that at all times relevant herein that SLS is vicariously liable for the acts or omissions of the other DEFENDANTS committed within the scope of their agency relationship and were the proximate cause of PLAINTIFF'S damages, harm, and injuries.

## JURISDICTION AND VENUE

11. This is an action for injunctive and declaratory relief, and damages against SLS and AFFINIA for Negligent Misrepresentation; Intentional Misrepresentation; as well as Unfair Business Practices under California Business & Professions Code Sections 17200; and Declaratory Relief, et seq.

12. This Court has subject-matter jurisdiction over the causes of action alleged in this Complaint because this Court is a court of general subject-matter jurisdiction and is not otherwise excluded from exercising subject-matter jurisdiction over said causes of action.

13. This Court has personal jurisdiction over DEFENDANTS because each DEFENDANT resides in, is incorporated in, has its main place of business in, and/or conducts business in the State of California, and a substantial portion of the acts, omissions, events, and transactions constituting the causes of action alleged herein occurred within the State of California. California Code of Civil Procedure § 410.10.

14. This Court is the appropriate venue for this action under California Code of Civil Procedure Sections 395 and 395.5, because the acts that give rise to the causes of action alleged herein

**VERIFIED FIRST AMENDED COMPLAINT**

occurred in the County of Tehama, State of California. PLAINTIFF hereby designates the County of Tehama, State of California, as the place of proper venue.

## **FACTUAL ALLEGATIONS**

15.   On or about February 11, 2003, PLAINTIFF took out a first loan mortgage against the Property from Long Beach Mortgage Company in the amount of $127,200.00. (A true and correct copy of the Deed of Trust ("DOT1"); recorded on February 20, 2003 with the Tehama County Recorder's Office as Document No. 003094; is attached hereto as **Exhibit A**, and herein incorporated by reference). *See* **Exhibit A**.

16.   On or about August 29, 2005, PLAINTIFF took out a second loan mortgage ("Loan") against the Property from Chapel Mortgage Corporation in the amount of $80,000.00. (A true and correct copy of the Deed of Trust ("DOT2"); recorded on September 12, 2005 with the Tehama County Recorder's Office as Document No. 021204; is attached hereto as **Exhibit B**, and herein incorporated by reference). *See* **Exhibit B**.

17.   In or around April 2011, PLAINTIFF filed a chapter 7 bankruptcy ("CH7 BK"). It was at this time that PLAINTIFF understood that both his first and second mortgages were under the protection of the CH7 BK.

18.   Sometime between April 2011 and December 2022, SLS became the servicer of the Loan.

19.   Additionally, between April 2011 and December 2022, PLAINTIFF never received a mortgage statement regarding the Loan.

20.   On or about December 14, 2022, AFFINIA, on behalf of SLS, recorded a Notice of Default ("NOD"). (A true and correct copy of the NOD; recorded with the Tehama County Recorder's Office as Document No. 2022014426; is attached hereto as **Exhibit C**, and herein incorporated by reference). *See* **Exhibit C**.

21.   It was at this time that PLAINTIFF learned that (1) SLS was the servicer of the Loan, and (2) that the Loan was in default.

22.   On or around January 30, 2023, PLAINTIFF completed a loss mitigation application and supporting documents ("2023 APPLICATION") including, but not limited to, hardship

**VERIFIED FIRST AMENDED COMPLAINT**

documentation, proof of income, bank statements showing his assets, and household contributor information if necessary.

23. On or around January 30, 2023, PLAINTIFF, by and through his counsel, spoke to SLS agent to receive the fax and/or email to submit the 2023 APPLICATION.

24. PLAINTIFF was informed that a loss mitigation application was not necessary, and that loan modifications were offered based solely on lien numbers based on computer algorithms. SLS proceeded to submit PLAINTIFF for loan modification review.

25. On or around February 1, 2023, SLS denied PLAINTIFF of modification assistance ("2023 DENIAL"), providing a letter stating "the account is not eligible for this program because the Combined loan-to-value ratio is greater than or equal to the 85% Combined loan-to-value ratio required for this program."  (A true and correct copy of the 2023 DENIAL is attached hereto as **Exhibit D**, and herein incorporated by reference). *See* **Exhibit D**.

## FIRST CAUSE OF ACTION
## PROMISSORY ESTOPPEL
### (Against All DEFENDANTS)

26. PLAINTIFF re-alleges and incorporates by reference each and every allegation and statement contained in all preceding paragraphs 1- 25 of this complaint ("Complaint").

27. In or around April 2011, PLAINTIFF filed the CH7 BK.  It was at this time that PLAINTIFF understood that both his first and second mortgages were under the protection of the CH7 BK.

28. Sometime between April 2011 and December 2022, SLS became the servicer of the Loan.

29. Additionally, between April 2011 and December 2022, PLAINTIFF never received a mortgage statement regarding the Loan.

30. On or about December 14, 2022, AFFINIA, on behalf of SLS, recorded a NOD. *See* **Exhibit C**.

31. It was at this time that PLAINTIFF learned that (1) SLS was the servicer of the Loan, and (2) that the Loan was in default.

32. DEFENDANTS failed to disclose to PLAINTIFF for almost 11 years that payment was due on the Loan.

**VERIFIED FIRST AMENDED COMPLAINT**

33. DEFENDANTS should have reasonably expected their failure it to induce PLAINTIFF to miss payments.

34. Had PLAINTIFF received a mortgage statement or been contacted by DEFENDANTS regarding the past due balance, he would have taken such action to avoid foreclosure, such as reinstatement or petition for bankruptcy.

35. PLAINTIFF'S reliance on DEFENDANTS' lack of communication was justified because said DEFENDANTS are experienced in real estate matters.

36. DEFENDANTS made a clear and unambiguous promise to PLAINTIFF that the Loan was not past due by not sending mortgage statements, or contacting PLAINTIFF by phone or certified letter that the Loan was in default.

37. PLAINTIFF reasonably and justifiably relied on said promise and put his trust in DEFENDANTS that it would fulfill its promise. As such, PLAINTIFF did no independent investigation into the Loan because it had purportedly already been done by DEFENDANTS.

38. DEFENDANTS did not perform their responsibility as entities with experience in real estate matters to provide disclosure to PLAINTIFF regarding balances due on an appropriate time-frame, such as weekly or monthly. Instead, DEFENDANTS failed to disclose the past due balance for 11 years, and then initiated foreclosure actions against PLAINTIFF.

39. PLAINTIFF's reliance on DEFENDANTS' promises was a substantial factor in causing PLAINTIFF harm as alleged herein.

40. DEFENDANTS' failure to disclose the past due balance for 11 years, and then initiate foreclosure actions against PLAINTIFF, was with intention to deceive and defraud PLAINTIFF, knowing that PLAINTIFF would not be able to afford the past due balance at the time of the recording of the NOD, and that the loan-to-value ratio would not qualify for modification.

41. PLAINTIFF'S effort to save his home from foreclosure was defeated by the recording of the NOD, because PLAINTIFF was not aware of the past due balance on the Loan.

42. As a proximate cause thereof, PLAINTIFF has been damaged in an amount to be proven at trial but not less than the jurisdictional limit of this court.

**VERIFIED FIRST AMENDED COMPLAINT**

43.   The aforementioned conduct was an intentional misrepresentation, deceit and/or concealment of material facts known to said Defendants, with the intention on the part of said Defendants of thereby depriving PLAINTIFF of property, legal rights or otherwise causing injury and was despicable conduct that subjected PLAINTIFF to cruel and unjust hardship and in conscious disregard of PLAINTIFF'S rights, so as to justify an award of exemplary and punitive damages.

### **Calculation of Loan-to-Value Ratio**

44.   On or around January 30, 2023, PLAINTIFF completed a loss mitigation application and supporting documents ("2023 APPLICATION") including, but not limited to, hardship documentation, proof of income, bank statements showing his assets, and household contributor information if necessary.

45.   On or around January 30, 2023, PLAINTIFF, by and through his counsel, spoke to SLS agent to receive the fax and/or email to submit the 2023 APPLICATION.

46.   PLAINTIFF was informed that a loss mitigation application was not necessary, and that loan modifications were offered based solely on lien numbers based on computer algorithms. SLS proceeded to submit PLAINTIFF for loan modification review.

47.   On or around February 1, 2023, SLS denied PLAINTIFF of modification assistance stating "the account is not eligible for this program because the Combined loan-to-value ratio is greater than or equal to the 85% Combined loan-to-value ratio required for this program." *See* **Exhibit D**.

48.   DEFENDANTS made a clear and unambiguous promises to PLAINTIFF that a loss mitigation application was not necessary.

49.   PLAINTIFF reasonably and justifiably relied on said representations and put his trust in DEFENDANTS that they would fulfill their promises. As such, PLAINTIFF was induced to believing that DEFENDANTS would contact PLAINTIFF if he had a past due balance, and take into consideration the documents prepared in the 2023 APPLICATION.

50.   DEFENDANTS did not perform their promises to PLAINTIFF that a loss mitigation application was not necessary. Instead, they denied PLAINTIFF for a loan modification solely on the

**VERIFIED FIRST AMENDED COMPLAINT**

grounds of a net present value test, without reviewing PLAINTIFFS' financial ability to pay the mortgage.

51.  PLAINTIFF's reliance on DEFENDANTS' promises was a substantial factor in causing PLAINTIFF harm as alleged herein.

52.  Had DEFENDANTS adhered to their promises, PLAINTIFF would not have suffered the very injuries that give rise to this Complaint because he would have been able to successfully pursue and obtain a non-foreclosure alternative and become current on the loan.

53.  PLAINTIFF stands to suffer imminent and further damages as a result of the breaches set forth above, in the form of a wrongful foreclosure of the Property.

54.  Despite DEFENDANTS' promises made to PLAINTIFF during the loan modification process, if the Property is conveyed to a third-party bona-fide purchaser, then PLAINTIFF and his family will have no recourse in recovering the Property.

55.  Additionally, PLAINTIFF has been injured by his reliance on DEFENDANTS' promises in that he has lost the opportunity to assume and modify the Loan and save his home from foreclosure; his home is subject to an imminent trustee's sale, and he and his family are subject to subsequent foreclosure and eviction; thousands of dollars in DEFENDANTS' attorneys' fees, excess interest, late fees, foreclosure fees, and other improper amounts added to the arrears that keep increasing due to DEFENDANTS' misconduct; expending at least $60,000.00 in order to protect their real property rights, and additional amounts, according to proof at the time of trial, all in excess of the jurisdictional minimum of this Court.

**SECOND CAUSE OF ACTION**
**Violation of Business & Professions Code Section § 17200**
(Against All DEFENDANTS)

56.  PLAINTIFF re-alleges and incorporates by reference each and every allegation and statement contained in all preceding paragraphs 1- 55 of this Complaint.

57.  California Business & Professions Code § 17200 et seq., also known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any unlawful, unfair, fraudulent or deceptive business act or practice as well as "unfair, deceptive, untrue or misleading

**VERIFIED FIRST AMENDED COMPLAINT**

1    advertising."

2    58.    SLS' conduct of failing to inform PLAINTIFF that the Loan was past due was unfair.

3    59.    SLS' conduct of denying PLAINTIFF for a loan modification solely on the grounds of a net

4    present value test, without reviewing PLAINTIFFS' financial ability to pay the mortgage was

5    unfair.

6    60.    The conduct and business practices of DEFENDANTS, and their agents, alleged herein,

7    constituted unfair and unlawful business practices within the provisions of California Business &

8    Professions Code§ 17200 et seq. As such, DEFENDANTS, and each of them, are liable for the

9    unfair, unlawful, and fraudulent conduct of itself, its agents, and its predecessors.

10   61.    DEFENDANTS', and their agents', conduct was unfair in that it threatens and violates the policy

11   or spirit of California law, and principles of law, including but not limited to, good faith and fair

12   dealing, because its effects are comparable to or the same as a violation of the law, or otherwise

13   significantly threatens or harms competition. Such unfair business practices by DEFENDANTS,

14   include, failing to unfairly comply with the tenets of to comply with the California foreclosure

15   statutes, as indicated *supra*, with respect to the failure to send periodic mortgage statements and

16   the improper calculation of the loan to value ratio.

17   62.    DEFENDANTS' and their agents' conduct and business practices violated Bus. & Prof. Code§

18   17200 in that their utility is significantly outweighed by the gravity of the harm that it imposes on

19   homeowners. DEFENDANTS have alternatives to this conduct that would be less harmful to

20   homeowners and PLAINTIFF, but which they do not employ because its present conduct is more

21   profitable and beneficial than these alternatives.

22   63.    Additionally, the conduct of DEFENDANTS and their agents and through each other, also

23   violates the "unfair" prong because the practice is oppressive, unscrupulous, and/or substantially

24   injurious to PLAINTIFF.

25   64.    As a direct and proximate result of DEFENDANTS' unfair, deceptive, fraudulent, and unlawful

26   business practices, PLAINTIFF, and DEFENDANTS' other borrowers and the public in general

27   have been injured.

28   65.    The unlawful and unfair business practices of DEFENDANTS described herein present a

**VERIFIED FIRST AMENDED COMPLAINT**

continuing threat to PLAINTIFF. The public in general is likely to be deceived into relying on DEFENDANTS' prompt and accurate servicing of their mortgage to avoid foreclosure, and DEFENDANTS adhering to California's statutory foreclosure scheme. DEFENDANTS are likely to persist and continue to engage in these practices, and will not cease doing so unless and until forced to do so by this Court.

66. DEFENDANTS' conduct is causing and will continue to cause irreparable injury to PLAINTIFF and the public in general unless enjoined or restrained.

67. DEFENDANTS' violations of Business & Professions Code § 17200 have added thousands of dollars in attorney's fees, late fees, and additional costs to the arrears on the Loan and default amount, as the amount due is now far greater than what was owed in 2011.

68. Additionally, due to DEFENDANTS' Business & Professions Code § 17200 violations, PLAINTIFF has been injured in that he has lost the opportunity to modify the Loan and save his home from foreclosure; their home is subject to an imminent trustee's sale, he and his family are subject to subsequent foreclosure and eviction; thousands of dollars in DEFENDANTS' attorneys' fees, excess interest, late fees, foreclosure fees, and other improper amounts added to the arrears on the Loan that keep increasing due to DEFENDANTS' misconduct; expending at least $60,000.00 in order to protect their real property rights, and additional amounts, according to proof at the time of trial, all in excess of the jurisdictional minimum of this Court.

### THIRD CAUSE OF ACTION
### DECLARATORY RELIEF
(Against SLS)

69. PLAINTIFF re-alleges and incorporates by reference each and every allegation and statement contained in all preceding paragraphs 1- 68 of this Complaint.

70. An actual controversy now exists between PLAINTIFF and SLS concerning their rights, duties and obligations to the PROPERTY, and specifically that SLS was not entitled to take steps toward foreclosure against the PROPERTY due to SLS'S negligence on informing PLAINTIFF of the past due balance before the recording of the NOD.

71. This controversy goes beyond merely the dispute between PLAINTIFF and SLS, and is a question of public interest generally, given the prevalence of mortgages on real estate, the

**VERIFIED FIRST AMENDED COMPLAINT**

nature, consequences, and commonality of mortgage loan servicing and the rights, duties and obligations of servicers to borrowers in the context of securitized mortgages and loss mitigation. As such the relative rights, duties, and obligations between the parties would not expire at the conclusion of this case, but would remain for all other borrows subject to the vicissitudes of customer service, the poor incentives regarding foreclosure processing vis-à-vis loss mitigation possibilities, and bad-faith actions of servicers of securitized mortgages.

72.   Therefore, both to prevent further litigation between the parties and to determine generalizable rights, duties, and obligations for similarly situated parties, PLAINTIFF desires a judicial determination and declaration of the parties' respective rights, duties, and obligations to the PROPERTY, and specifically that that CITADEL was not entitled to foreclose on the PROPERTY.

**FOURTH CAUSE OF ACTION**
**QUIET TITLE CCP § 761.020**
(Against All DEFENDANTS)

73.   PLAINTIFF re-alleges and incorporates by reference each and every allegation and statement contained in all preceding paragraphs 1- 73 of this Complaint.

74.   Based on the foregoing, PLAINTIFF seeks a judgment of the court that PLAINTIFF is the sole owner of all rights, titles, and interest in the Subject Property.

75.   PLAINTIFF is seeking to quiet title to the PROPERTY such that all right, title, and interest shall be vested in PLAINTIFF. PLAINTIFF seeks a judgment that Defendants and their heirs and assignees have no right, title, or interest of any kind in the Subject Property.

**PRAYERS FOR RELIEF**
**Preliminary and Permanent Injunction**
(Against All DEFENDANTS)

76.   PLAINTIFF re-alleges and incorporates by reference each and every allegation and statement contained in all preceding paragraphs 1- 75 of this Complaint.

77.   On December 14, 2022, AFFINIA, on behalf of SLS, recorded a NOD against the Property. *See* **Exhibit C**.

78.   If DEFENDANTS are allowed to conduct a trustee's sale against PLAINTIFF'S home, then

PLAINTIFF will be subject to imminent eviction and as a result PLAINTIFF will have no means of reestablishing title and residency in the PROPERTY, for which he is clearly capable of protecting by making payments. If DEFENDANTS are allowed to foreclose upon the PROPERTY, PLAINTIFF will suffer severe and irreparable injury by reason of the wrongful and unlawful recording of the NOD.

79.   Monetary damages will not suffice to make PLAINTIFF whole as a result of the unique nature of real property. Accordingly, PLAINTIFF has no adequate remedy at law.

80.   PLAINTIFF respectfully requests the Court to (1) order DEFENDANTS to rescind the NOD (**Exhibit C**); (2) prohibit DEFENDANTS from continuing foreclosure proceedings against the PROPERTY during the pendency of this action; (3) prohibit DEFENDANTS from selling the PROPERTY at a trustee's sale during the pendency of this action; and (4) compel DEFENDANTS to review PLAINTIFF's loan modification application in good faith.

81.   PLAINTIFF is also entitled to injunctive relief under Business & Professions Code §§ 17200 & 17203. *See Motors, Inc. v. Times Mirror Co.* (1980) 102 Cal. App. 3d 735, 740 (a trial court has broad authority to enjoin conduct that violates Business & Professions Code § 17200).

## **FURTHER PRAYERS FOR RELIEF**

WHEREFORE, PLAINTIFF prays for judgment against DEFENDANTS as follows:

1.   For damages according to proof;

2.   For damages according to statute;

3.   For restitution;

4.   For reasonable attorneys' fees and costs according to proof;

5.   For reasonable attorneys' fees and costs according to statute;

6.   For an order compelling DEFENDANTS to rescind the Notice of Default;

7.   For an order enjoining and prohibiting DEFENDANTS from further continuing foreclosure proceeding against the Property during the pendency of this action;

8.   For an order enjoining and prohibiting DEFENDANTS from selling the Property during the pendency of this action; and

**VERIFIED FIRST AMENDED COMPLAINT**

9.     For such other and further relief as this Court deems just and proper.

DATED: June 20, 2023                              **VORTEX LAW GROUP**

By: _____
     SAFORA NOWROUZI, ESQ.
     Attorney for PLAINTIFF
     SCOTT A. JOHNSTON

VERIFICATION

I, Scott A. Johnston, am the Plaintiff in the above-entitled action.

I declare under penalty of perjury under the laws of the State of California and of the United States of America that the foregoing is true and correct.

Dated: June 20, 2023

_____
                Scott A. Johnston

# EXHIBIT A

EXHIBIT A

First American

*my* FirstAm®    Recorded Document                    240 Williams Ave, Red Bluff, CA 96080

The requested Recorded Document images are displayed in the subsequent pages for the following property:

240 Williams Ave
Red Bluff, CA 96080

Document Number: 2259-0373
Document Date: 20030220

Limitation of Liability for Informational Report

IMPORTANT – READ CAREFULLY:  THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION  OF THE CONDITION OF TITLE TO REAL PROPERTY.  IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY  REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY.  THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT  THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON.  THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S  PRIOR WRITTEN CONSENT.  FIRST AMERICAN DOES NOT REPRESENT  OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS.  AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S  SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT.  RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN  WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION  OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

©2005-2023 First American Financial Corporation and/or its affiliates. All rights reserved.

**003094**

BOOK **2259** PAGE **373**

RECORDING REQUESTED BY:

LONG BEACH MORTGAGE COMPANY

AND WHEN RECORDED MAIL TO:

P.O. BOX 201085
STOCKTON, CA 95202

Loan No. 5112875-7759

RECORDED AT REQUEST OF
NORTHERN CALIFORNIA TITLE CO
at ___ min. past ___M

FEB 20 2003

OFFICIAL RECORDS
TEHAMA COUNTY, CALIFORNIA
MARY ALICE GEORGE
Fee $ *25.-*    Recorder 7

# DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on    **February    11 , 2003**    . The trustor is
**SHERRY JOHNSTON and SCOTT JOHNSTON, WIFE AND HUSBAND AS JOINT TENANTS**

("Borrower"). The trustee is    **LONG BEACH MORTGAGE COMPANY**

("Trustee"). The beneficiary is    **LONG BEACH MORTGAGE COMPANY**

which is organized and existing under the laws of **the State of Delaware**    , and whose
address is    **1100 TOWN & COUNTRY ROAD, ORANGE, CA 92868**
("Lender"). Borrower owes Lender the principal sum of
**One Hundred Twenty Seven Thousand Two Hundred and no/100**-------------------------
Dollars (U.S. $    **127,200.00**    ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on    **March    1 ,    2033**    .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to
protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this
Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of
sale, the following described property located in    **TEHAMA**    County, California:

**LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF**

which has the address of  240  WILLIAMS AVENUE    **RED BLUFF**    [Street, City],
California    96080    [Zip Code]  ("Property Address");
**CALIFORNIA**-Single Family-FNMA/FHLMC
**UNIFORM INSTRUMENT Form 3005 9/90**
-6H(CA) (9808)    Initials:    Amended 12/93
VMP MORTGAGE FORMS - (800)521-7291    Page 1 of 8
TDCA1 (03/2901) LH

25×

BOOK 2259 PAGE 374

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

-6H(CA) (9806)
TDCA2 (03/2001) I.H

Page 2 of 6

Initials

Form 3005  9/90
Loan No. 5112875-7759

BOOK**2259**PAGE**375**

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve

-6H(CA) (9806)

FHCA Y 08/26/01 LH

Page 3 of 6

Initials:

Form 3005  9/90

Loan No. 5112875-7759

BOOK2259PAGE376

payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

-6H(CA) (9806)

Page 4 of 6

Initials:

Form 3005 9/90

Loan No. 5012875-7759

25×10

BOOK**2259**PAGE**377**

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made

BOOK2259PAGE378

therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under applicable law.

23. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

24. **Request for Notices.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

26. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ VA Rider | ☐ Other(s) [specify] | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____    _____ (Seal)
                                    SHERRY JOHNSTON                -Borrower

_____    _____ (Seal)
                                    SCOTT JOHNSTON                 -Borrower

_____ (Seal)    _____ (Seal)
                            -Borrower                                -Borrower

State of California
County of          Tehama                  } ss.

On     February 13, 2003          before me,    Nanette Eller

     SHERRY JOHNSTON and SCOTT JOHNSTON                                    personally appeared

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

_____ (Seal)

NANETTE ELLER
COMM # 1348217
NOTARY PUBLIC-CALIFORNIA
TEHAMA COUNTY
COMM. EXP. APRIL 22, 2006

-6H(CA) (9806)    Page 6 of 6    Form 3005   9/90
                                Loan No. 5112875-7759

25 x In

Reference No. 32344                                          BOOK **2259** PAGE **379**

## Exhibit A

The land referred to herein is situated in the unincorporated area, County of Tehama, State of California, and is described as follows:

Beginning at a point which bears South 34° 13' East 72.58 feet, and thence South 1° 0' East 384.88 feet from the Northwest corner of the Northeast quarter of the Southwest quarter of Section 21, Township 27 North, Range 3 West, Mount Diablo Meridian, and running from said point of beginning, North 89° 0' East 220.71 feet; thence South 29° 53' East 91.37 feet; thence South 89° West 253.92 feet; thence North 1° 0' West 80 feet, more or less, to the point of beginning.

Together with a non-exclusive easement for ingress and egress over the North 3.0 feet of the West 161.0 feet of the following described parcel:

Beginning at a point which bears South 34° 13' East 72.58 feet and thence South 1° 0' East 464.88 feet from the Northwest corner of the Northeast quarter of the Southwest quarter of Section 21, Township 27 North, Range 3 West, MDM, and running from said point of beginning North 89° 0' East 263.92 feet; thence South 29° 53' East 91.37 feet; thence South 89° 0' West 308.0 feet; thence North 1° 0' West 80 feet to the point of beginning.

Said easement is for the benefit of and appurtenant to the first above described parcel

END OF DOCUMENT

25×10

# EXHIBIT B

EXHIBIT B

*First American*

*my* **FirstAm**®    Recorded Document                          240 Williams Ave, Red Bluff, CA 96080

The requested Recorded Document images are displayed in the subsequent pages for the following property:

240 Williams Ave
Red Bluff, CA 96080

Document Number: 2791-0401
Document Date: 20050912

Limitation of Liability for Informational Report

IMPORTANT – READ CAREFULLY:  THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION  OF THE CONDITION OF TITLE TO REAL PROPERTY.  IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY  REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY.  THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT  THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON.  THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S  PRIOR WRITTEN CONSENT.  FIRST AMERICAN DOES NOT REPRESENT  OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS.  AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S  SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT.  RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN  WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION  OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

©2005-2023 First American Financial Corporation and/or its affiliates. All rights reserved.

021204

BOOK 2791 PAGE 401

*Fidelity National Title*

Recording Requested By:
CHAPEL MORTGAGE CORPORATION

RECORDED AT REQUEST OF
FIDELITY NATIONAL TITLE
at ___ min, past ___ M

SEP 1 2 2005

OFFICIAL RECORDS
TEHAMA COUNTY, CALIFORNIA
MARY ALICE GEORGE
Fee $ 44 —    Recorder | |

After Recording Return To:
CHAPEL FUNDING CORPORATION ATTN: SHIPPING DEPT.
26621 RANCHO PARKWAY SOUTH STE #200, LAKE FOREST,
CALIFORNIA 92630

Prepared By:

601430-CK    [Space Above This Line For Recording Data]

DOC ID #: 428917

## DEED OF TRUST AND ASSIGNMENT OF RENTS

MIN 1000534-0000008908-2

This deed of trust secures an obligation which calls for payment of interest at a variable interest rate.
THIS DEED OF TRUST is made this    29th    day of AUGUST, 2005 , between
SCOTT A. JOHNSTON, A MARRIED MAN, AS HIS SOLE AND SEPARATE
PROPERTY

herein called "Trustor,"  FIDELITY NATIONAL TITLE COMPANY, 710 MAIN
STREET, RED BLUFF, CALIFORNIA 96080

herein called "Trustee," and "Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as
nominee for  CHAPEL MORTGAGE CORPORATION, A NEW JERSEY
CORPORATION
(hereinafter "you" or "Lender" and Lender's successors and assigns.) MERS is organized and existing
under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI
48501-2026, tel. (888) 679-MERS, herein called "Beneficiary."

Trustor irrevocably grants, transfers and assigns to Trustee, in trust and with power of sale, all of the real
property in the City or Town of  RED BLUFF                      , County of
TEHAMA                  , State of California, having the street address of
240 WILLIAMS AVENUE, RED BLUFF, CALIFORNIA 96080
and more specifically described as:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N. #: 41-290-04

HELOC - CA Deed of Trust with MERS        Page 1 of 10
FE-4331(CA) (03/4)    FORMSDOC - (800)655-4111        Initials: *S.A.J.* 4/00

Parcel ID Number: 41-280-04                     together with all improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents (subject however to the rights and authorities given herein to Beneficiary to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water, water rights, and water stock, and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this deed of trust; and all of the foregoing, together with said property (or the leasehold estate if this deed of trust is on a leasehold) are herein referred to as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Deed of Trust; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Deed of Trust.

1.    THIS DEED OF TRUST SECURES:

      a.    All of the obligations of Trustor in favor of Beneficiary or order under the terms of a revolving credit agreement dated  AUGUST 29, 2005 , herein called Agreement. The Agreement provides, among other things, for the payment of all sums advanced by Beneficiary from time to time pursuant to the Agreement and for the payment of interest. The maximum principal obligation under the Agreement to be secured by this deed of trust at any one time is EIGHTY THOUSAND AND 00/100
      Dollars ($ 80,000.00    ) unless Beneficiary, with Trustor's written consent, hereafter increases this amount. Advances made by Beneficiary to protect the security of this deed of trust or to preserve the Property shall not be subject to the limitation of the preceding sentence.

      The security of this deed of trust shall not be affected by the extension, renewal or modification from time to time of the obligations, instruments or agreements described above.

      b.    Payment of any and all obligations and liabilities, whatsoever, whether primary, secondary, direct, indirect, fixed or contingent, whether now or hereafter due from Trustor (or any successor in interest to Trustor) whether created directly or acquired by assignment if the document evidencing such obligation or liability or any other writing signed by Trustor (or any successor in interest to Trustor) specifically provides that said obligation or liability is secured by this deed of trust.

      c.    Performance of each agreement of Trustor herein contained or contained in any other agreement, instrument or other writing to which Trustor is a party if the same is written in connection with any of the foregoing.

FE-4331(CA) (0204)                         Page 2 of 10                         Initials: _____

d.   Payment of all sums to be expended by the Beneficiary or Trustee pursuant to the terms hereof.

2.   **TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES:**

a.   To keep the Property in good condition and repair; not to remove or demolish any building or improvement thereon; to complete or cause to be completed any construction of buildings or other improvements thereon which are financed in whole or in part by the indebtedness secured hereby and to restore promptly and in good and workmanlike manner any building or other improvement which may be damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting the Property or requiring any alteration or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, weed, fertilize, fumigate, spray, prune and do all other acts which from the character or use of the Property may be reasonably necessary, the specific enumerations herein not excluding the general.

b.   To provide, maintain and deliver to Beneficiary fire and other insurance on the Property satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary, the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default hereunder or invalidate any act done pursuant to such notice.

c.   To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this deed of trust.

d.   To pay at least ten days before delinquency all taxes and assessments affecting the Property, including, without limitation, assessment on appurtenant water stock, all encumbrances, charges and liens on the Property or any part thereof, and all costs, fees and expenses of this Trust.

e.   That should Trustor fail to make any payment or do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may:

   (1)   Make or do the same in such manner and to such extent as either may deem necessary or appropriate to protect the security hereof, Beneficiary or Trustee being authorized to enter upon the Property for such purposes.

   (2)   Appear in and defend any action or proceeding purporting to affect the security hereof or the rights or power of Beneficiary or Trustee.

   (3)   Pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior and superior hereto.

   (4)   In exercising any such powers, pay necessary expenses, employ counsel and pay his or her reasonable fees.

FE-4331(CA) (0204)                    Page 3 of 10                    Initials

BOOK 2791 PAGE 404

f.   To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the maximum rate allowed by law in effect at the date hereof or at the option of Beneficiary, such sums may be added to the principal balance of any indebtedness secured hereby and shall bear the highest rate of interest as any such indebtedness.

g.   To pay for any statement provided for by the law in effect on the date hereof regarding the obligation secured hereby in the amount demanded by the Beneficiary but not to exceed the maximum allowed by law at the time the statement is demanded.

3.   **IT IS FURTHER AGREED THAT:**

a.   Any award of damages in connection with any condemnation for public use of or injury to the Property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such monies received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

b.   By accepting payment of any sum secured hereby after its due date, or after the filing of notice of default and of election to sell, Beneficiary shall not waive its right to require prompt payment when due of all other sums so secured, or to declare default for failure so to pay, or to proceed with the sale under any such notice of default and of election to sell, for any unpaid balance of said indebtedness. If Beneficiary holds any additional security for any obligation secured hereby, it may enforce the sale thereof at its option, either before, contemporaneously with, or after the sale is made hereunder, and on any default of Trustor, Beneficiary may, at its option, offset against any indebtedness owing by it to Trustor, the whole or any part of the indebtedness secured hereby.

c.   Without affecting the liability of any person, including, without limitation, Trustor, for the payment of any indebtedness secured hereby, or the lien of this deed of trust on the remainder of the Property for the full amount of any indebtedness unpaid, Beneficiary and Trustee are respectively empowered as follows:

(1)   Beneficiary may from time to time and without notice (a) release any person liable for the payment of any of the indebtedness, (b) extend the time or otherwise alter the terms of payment of any of the indebtedness, (c) accept additional security therefor of any kind, including deeds of trust or mortgages, (d) alter, substitute or release any of the Property securing the indebtedness.

(2)   Trustee may, at any time, and from time to time, upon the written request of Beneficiary (a) consent to the making of any map or plat of the Property, (b) join in granting any easement or creating any restriction thereon, (c) join in any subordination or other agreement affecting this deed of trust or the lien or charge thereof or, (d) reconvey, without any warranty, all or any part of the Property.

d.   Upon (a) written request of Beneficiary or (b) performance of all obligations of the Trustor hereunder and under each and every note, guarantee, Agreement or other writing evidencing the indebtedness secured hereby, and upon surrender of this deed of trust to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the Property then held hereunder. The recital in such reconveyance of any matters of facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described

BOOK 2791 PAGE 405

as "the person or persons legally entitled thereto." Five years after issuance of such reconveyance, Trustee may destroy said note, guarantee, Agreement or other evidence of indebtedness and this deed of trust (unless directed in such request to retain them).

e.    Trustor hereby gives to and confers upon Beneficiary the right, power and authority during the continuance of these trusts to collect the rents, issues and profits of the Property and of any personal property located thereon, and hereby absolutely and unconditionally assigns all such rents, issues and profits to Beneficiary; provided, however, that Beneficiary hereby consents to the collection and retention of such rents, issues and profits as they accrue and become payable only if Trustor is not, at such time, in default with respect to payment of any indebtedness secured hereby or in the performance of any agreement hereunder. Upon any such default, Beneficiary may at any time, without notice, either in person, by agent, or by a receiver to be appointed by a court, without regard to the adequacy of any security for the indebtedness hereby secured and without limiting the generality of Section 2.e.(1), above, enter upon and take possession of the Property or any part thereof, and in its own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine; also perform such acts of repair, nurturing, cultivation, irrigation, weeding, fertilizing, fumigation, spraying, pruning or protection, as may be necessary or proper to conserve the value of the Property or any trees, planting or crops growing thereon; also lease the same or any part thereof for such rental, term, and upon such conditions as its judgment may dictate; also prepare for harvest, sever, remove, and sell any crops that may be growing upon the premises, and apply the net proceeds thereof to the indebtedness secured hereby. The entering upon and taking possession of the Property and performance or failure to perform any of the acts described in the preceding sentence, the collection of or failure to collect such rents, issues and profits, and the application thereof as aforesaid, shall not waive or cure any default or notice of default hereunder, or invalidate any act done pursuant to such notice and shall not constitute or otherwise result in any assumption by or liability of Beneficiary for maintenance, depreciation, misuse or risk of loss other than for damage or loss to the Property due to Beneficiary's gross negligence or intentional torts. Trustor also assigns to Trustee, as further security for the performance of the obligations secured hereby, all prepaid rents and all monies which may have been or may hereafter be deposited with said Trustor by any lessee of the premises herein described, to secure the payment of any rent, and upon default in the performance of any of the provisions hereof, Trustor agrees to deliver such rents and deposits to the Trustee.

f.    Upon default by Trustor in the performance of any payment or other obligation secured hereby or in the performance of any agreement hereunder, or if, whether voluntarily or involuntarily, there is a sale or transfer of all or any part of (i) the Property or an interest therein, or (ii) a beneficial interest in Trustor and Trustor is not a natural person, or if Trustor ceases to use the Property as Trustor's primary residence, Beneficiary may declare all sums secured hereby immediately due without notice or demand and no waiver of this right shall be effective unless in writing and signed by Beneficiary.

g.    Waiver of a right granted to Beneficiary hereunder as to one transaction or occurrence shall not be deemed to be a waiver of the right as to any subsequent transaction or occurrence. Beneficiary may rescind any notice before Trustee's sale by executing a notice of rescission and recording the same. The recordation of such notice shall constitute also a cancellation of any prior declaration of default and demand for sale, and of any acceleration of maturity of indebtedness

FE-4331(CA) (0204)                    Page 5 of 10                    Initials _____

BOOK 2791 PAGE 406

affected by any prior declaration or notice of default. The exercise by Beneficiary of the right of rescission shall not constitute a waiver of any default then existing or subsequently occurring, nor impair the right of the Beneficiary to execute other declarations of default and demand for sale, or notices of default and of election to cause the Property to be sold, nor otherwise affect the note or deed of trust, or any of the rights, obligations or remedies of the Beneficiary or Trustee hereunder.

h.   At least three months or any lesser period required by law having elapsed between the recordation of the notice of default and the date of sale, Trustee, having first given notice of sale as then required by law, shall sell the Property at the time and place of sale fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as the Trustee may determine, at public auction to the highest bidder for cash, in lawful money of the United State of America, payable at the time of sale except as otherwise permitted by law. Trustee may postpone sale of all or any portion of the Property by public announcement at the time of sale, and from time to time thereafter may postpone the sale by public announcement, all as permitted by law. Trustee shall deliver to the purchaser its deed conveying the Property so sold, but without any covenant or warranty, expressed or implied. The recital in any such deed of any matters or facts, stated either specifically or in general terms, or as conclusions of law or fact, shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary, may purchase at the sale. After deducting all costs, fees and expenses of Trustee and of this trust, including costs of evidence of title in connection with the sale, the Trustee shall apply the proceeds of this sale to the payment of all sums then secured hereby, in such order and manner as may be required by the Beneficiary; the remainder, if any, to be paid to the person or persons legally entitled thereto. If Beneficiary shall elect to bring suit to foreclose this deed of trust in the manner and subject to the provisions, rights and remedies relating to the foreclosure of a mortgage, Beneficiary shall be entitled to reasonable attorney's fees and litigation costs.

i.   Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this deed of trust is recorded and the name and address of the new Trustee.

j.   This deed of trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including, without limitation, pledgees, of the note, guarantee, Agreement, or other evidence of indebtedness secured hereby, whether or not named as Beneficiary herein. In this deed of trust, whenever the context so requires, the singular number includes the plural.

k.   Trustee accepts this Trust when this deed of trust, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other deed of trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

l.   If Trustor or any successor in interest to Trustor sells, transfers or encumbers any interest in the Property, whether voluntarily or involuntarily, or if a beneficial interest in Trustor is sold or transferred, voluntarily or involuntarily, and Trustor is not a natural person: (a) the transferor and the transferee shall each immediately give written notice of said transfer to the Beneficiary, at its address designated on the first page of this deed of trust: (b) if the deed of trust secures Trustor's obligation under an Agreement as defined herein, all credit extended by Beneficiary under the Agreement, whether before or after the property is transferred, shall be secured under this deed of trust as if no transfer had occurred except for credit extended by Beneficiary more than five days after it has received the written notices required by this paragraph.

m.   The pleading of any statute of limitations as a defense to any and all obligations secured by this deed of trust is hereby waived to the full extent permitted by law.

4.     WITH REGARD TO ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES, TRUSTOR AGREES:

a.     As used in this Paragraph 4:

(1)   "Environmental Law" means all federal, state and local law concerning the public health, safety or welfare, environment or a Hazardous Substance, including without limitation, the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Sec. 9601 et seq., Resource Conservation and Recovery Act, 42 U.S.C. Sec. 6901 et seq., Toxic Substances Control Act, 15 U.S.C. Sec. 2601 et seq., Hazardous Materials Transportation Act, 49 U.S.C. Sec. 1801 et seq., Clean Water Act and Water Quality Act of 1987, 33 U.S.C. Sec. 1251 et seq., Safe Drinking Water Act, 41 U.S.C. Sec. 300f et seq., Clean Air Act, 42 U.S.C. Sec. 7901 et seq., Carpenter-Presley-Tanner Hazardous Account Act, Cal.Health & Safety Code Sec. 25300 et seq., Hazardous Waste Control Law, Cal.Health & Safety Code Sec. 25100 et seq., Porter-Cologne Water Quality Control Act, Cal.Water Code Sec. 1300 et seq., Hazardous Waste Disposal Land Use Law, Cal.Health & Safety Code Sec. 25220 et seq., Safe Drinking Water and Toxic Enforcement Act of 1986, Cal.Health & Safety Code Sec. 25249.5 et seq., Hazardous Substances Underground Storage Tank Law, Cal.Health & Safety Code Sec. 25280 et seq., Air Resources Law, Cal.Health & Safety Code Sec. 3900 et seq., Hazardous Materials Release Response Plans and Inventory, Cal.Health & Safety Code Sec. 25500 et seq., and Toxic Pits Cleanup Act of 1984, Cal.Health & Safety Code Sec. 25208 et seq.

(2)   "Hazardous Substance" means any substance which has characteristics of ignitability, corrosivity, toxicity, reactivity or radioactivity or other characteristics which render it dangerous or potentially dangerous to public health, safety or welfare or the environment, including without limitation, (i) petroleum or any fraction or other byproduct thereof, (ii) asbestos, (iii) lead, (iv) cyanide, (v) polychlorinated biphenyls, (vi) urea formaldehyde and (vii) anything defined as a "hazardous material," "toxic substance," "hazardous substance," "hazardous waste" or "waste" under any Environmental Law, including without limitation, "hazardous substance" as defined in Cal.Health & Safety Code Sec. 25316 and "waste" and "hazardous substance" as defined in Cal.Water Code Sec. 13050(d) and Sec. 13050(p)(i), respectively. The term is intended by Trustor and Beneficiary to be interpreted in its most comprehensive and cumulative sense.

b.   Trustor represents and warrants that except as disclosed to and acknowledged in writing by Beneficiary before the date of this deed of trust:

FE-4331(CA) (0204)                    Page 7 of 10                                      Initials: _____

(1)  No Hazardous Substance has been located, used, manufactured, generated, treated, handled, stored, spilled, disposed of, discharged or released by any person on, under or about the Property.

(2)  Trustor has no knowledge of or reason to believe that there is any pending or threatened investigation, assessment, claim, demand, action or proceeding of any kind relating to (i) any alleged or actual Hazardous Substance located under or about the Property or (ii) alleged or actual violation or noncompliance by Trustor or any tenant of Trustor with regard to any Environmental Law involving the Property.

(3)  Neither Trustor nor any tenant of Trustor is required by any Environmental Law to obtain or maintain any permit, license, financial responsibility certificate or other approval as a condition to its business operations or in connection with its use, development or maintenance of the Property.

c.  Trustor represents and warrants that Trustor and every tenant of Trustor have been, are and will remain in full compliance with any Environmental Law applicable to its business operations and its use, development or maintenance of the Property.

d.  Trustor agrees to permit, or cause any tenant of Trustor to permit, Beneficiary to enter and inspect the Property at any reasonable time for purposes of determining, as Beneficiary deems necessary or desirable: (i) the existence, location and nature of any Hazardous Substance on, under or about the Property, (ii) the existence, location, nature, magnitude and spread of any Hazardous Substance that has been spilled, disposed of, discharged or released on, under or about the Property or (iii) whether or not Trustor and any tenant of Trustor are in compliance with applicable Environmental Law. If Trustor or its tenant fails to comply fully with the terms hereof, Beneficiary may obtain affirmative injunctive relief therefor.

e.  Trustor agrees to indemnify and hold Beneficiary and its successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including, without limitation, all costs of litigation and attorneys' fees, which Beneficiary and its successors and assigns may directly or indirectly sustain or suffer as a consequence of any inaccuracy or breach of any representation, warranty or promise made in this deed of trust in connection with any Hazardous Substance or Environmental Law. Notwithstanding any of the language in the deed of trust to the contrary, this indemnity covers claims asserted after all the indebtedness secured by this deed of trust has been paid and discharged, whether or not the deed of trust has also been reconveyed to Trustor. The only exclusions hereto may relate to claims arising out of the affirmative acts of Beneficiary or of a third party after Trustor's interest in the Property has terminated.

f.  The provisions of this Paragraph 4 shall not be affected by the acquisition by Beneficiary or its successors or assigns of any ownership or other interest in the Property beyond Beneficiary's security interest in the Property created under this deed of trust, whether or not such acquisition is pursuant to the foreclosure of this deed of trust or a merger of the interest of the Beneficiary or its successors and assigns in the Property.

FE-4331(CA) (0204)                    Page 9 of 10                    Initials: _____

BOOK 2791 PAGE 409

5.    ADDITIONAL PROVISIONS:

a.    The execution of this deed of trust by any person who has no present interest in the Property shall not be deemed to indicate that such an interest presently exists. Rather, execution of this deed of trust by such a person shall constitute such person's agreement that if such person hereafter acquires an interest in the Property, such interest shall be subject to Beneficiary's interest hereunder.

b.    The execution of this deed of trust by any person who has a present interest in the Property shall not in itself be deemed to indicate that such person is liable to Beneficiary for any obligation described in Section 1., above. Any personal liability of such person to Beneficiary shall be determined on an independent basis (such as execution of the document or documents evidencing the obligation described in Section 1., above). Execution of this deed of trust by any such person shall nevertheless indicate that such person's interest in the Property shall be subject to Beneficiary's interest hereunder.

The undersigned Trustors request that a copy of any notice of default, and of any notice of sale hereunder, be mailed to their respective addresses set forth opposite each signature.

By signing below, Trustor agrees to all the terms and conditions of this deed of trust.

Mailing Address For Notices

240 WILLIAMS AVENUE,
RED BLUFF, CA 96080

SCOTT A. JOHNSTON

_____

_____

_____

FE-4331(CA) (0204)                    Page 9 of 10

BOOK 279 PAGE 410

State of California
County of TEHAMA
On  8·30·05  , before me  C. Riggins  personally appeared

SCOTT A. JOHNSTON

, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
    WITNESS my hand and official seal.

_C. Riggins_

```
C. RIGGINS
Comm. # 1339773
NOTARY PUBLIC-CALIFORNIA
Tehama County
My Comm. Expires Jan. 14, 2006
```

FE-4331(CA)  (04)                    Page 10 of 10

BOOK **2791** PAGE **411**
Title No. 05-961430

Locate No. CAFNT0952-0952-0001-0000501430

## LEGAL DESCRIPTION

## EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF RED BLUFF, COUNTY OF TEHAMA, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

Beginning at a point which bears South 34° 13' East 72.58 feet, and thence South 1° 0' East 384.88 feet from the Northwest corner of the Northeast quarter of the Southwest quarter of Section 21, Township 27 North, Range 3 West, Mount Diablo Meridian, and running from said point of beginning, North 89° 0' East 220.71 feet, thence South 29° 53' East 91.37 feet, thence South 89° West 263.92 feet, thence North 1° 0' West 80 feet, more or less, to the point of beginning.

NOTE:

The examination of the Official Records of Tehama County disclose that the herein described land derives the following appurtenant rights, which have not been examined as to their insurability. However, said rights should be included in any conveyance or encumbrance of said land:

A non-exclusive easement for ingress and egress over the North 3.0 feet of the West 161.0 feet of the following described parcel:

Beginning at a point which bears South 34° 13' East 72.58 feet and thence South 1° 0' East 464.88 feet from the Northwest corner of the Northeast quarter of the Southwest quarter of Section 21, Township 27 North, Range 3 West, MDM, and running from said point of beginning North 89° 0' East 263.92 feet, thence South 29° 53' East 91.37 feet, thence South 89° 0' West 308.0 feet, thence North 1° 0' West 80 feet to the point of beginning.

Said easement is for the benefit of and appurtenant to the first above described parcel.

APN: 41-280-04

**END OF DOCUMENT**

2

CLTA Preliminary Report Form (11/17/04)

# EXHIBIT C

# EXHIBIT C

First American

*my* FirstAm®    Recorded Document                      240 Williams Ave, Red Bluff, CA 96080

The requested Recorded Document images are displayed in the subsequent pages for the following property:

240 Williams Ave
Red Bluff, CA 96080

Document Number: 000000014426
Document Date: 20221214

Limitation of Liability for Informational Report

IMPORTANT – READ CAREFULLY:  THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION  OF THE CONDITION OF TITLE TO REAL PROPERTY.  IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY  REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY.  THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT  THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON.  THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S  PRIOR WRITTEN CONSENT.  FIRST AMERICAN DOES NOT REPRESENT  OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS.  AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S  SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT.  RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN  WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION  OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

©2005-2023 First American Financial Corporation and/or its affiliates. All rights reserved.

Doc # 2022014426
Page 1 of 3
Date: 12/14/2022 01:08P
Recording Requested By:
SERVICELINK MULTI - SIMPLIFILE
Filed & Recorded in Official Records
of TEHAMA COUNTY
JENNIFER A. VISE
COUNTY CLERK & RECORDER
Fee: $95.00

**RECORDING REQUESTED BY:**
ServiceLink

**AND WHEN RECORDED MAIL TO:**
Affinia·Default Services, LLC
301 E. Ocean Blvd., Suite 1720
Long Beach, CA 90802

SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN: **041-280-004-000**          TS No.: **22-04288CA**          TSG Order No.: **220562399-CA-VOI**

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED*
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

### IMPORTANT NOTICE

IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five (5) business days prior to the date set for the sale of your property. No sale date may be set until approximately ninety (90) days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$82,723.12** as of **12/21/2022** and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three (3) months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

* The summary documents shall be provided to the trustor(s) and/or vested owner(s), Cal. Civ. Code § 2923.3(c)(2). These summaries are not required to be recorded or published, Cal. Civ. Code § 2923.3(a).

22-04288CA

TO FIND OUT THE AMOUNT YOU MUST PAY, OR TO ARRANGE FOR PAYMENT TO STOP THE FORECLOSURE, OR IF YOUR PROPERTY IS IN FORECLOSURE FOR ANY OTHER REASON, CONTACT:

**Specialized Loan Servicing LLC**
**c/o Affinia Default Services, LLC**
**301 E. Ocean Blvd., Suite 1720, Long Beach, CA 90802**
**Attn: Foreclosure Dept.**
**Phone: (833) 290-7452**
**Fax: (562) 983-5379**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

**Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

**NOTICE IS HEREBY GIVEN THAT Affinia Default Services, LLC** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **August 29, 2005**, executed by **Scott A. Johnston, a married man, as his sole and separate property**, as Trustor(s), to secure certain obligations in favor of **Mortgage Electronic Registration Systems, Inc. solely as nominee for Chapel Mortgage Corporation, a New Jersey Corporation, its successors and assigns**, as beneficiary, recorded on **September 12, 2005** Document No.: **021204 Book 2791 Page 401**, of Official Records in the Office of the Recorder of **Tehama** County, California describing land therein as: As more fully described on said Deed of Trust.

Included among these obligations is one Note(s) for the original sum of **$80,000.00** that that beneficial interest under such Deed of Trust and the obligations secured thereby presently held by the beneficiary or its agent; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

1)  **Installment of Principal and Interest which became due on August 2, 2010, plus impounds and/or advances together with late charges, and all subsequent installments of principal, interest, plus impounds and/or advances and late charges and any reoccurring obligation that become due, including trustee's fees and expenses.**

That by reason therefore, the present beneficiary under such deed of trust has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

<u>**NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS WAIVER OF ANY OTHER FEES OWING TO THE BENEFICIARY, OR OTHER DEFAULT BY THE TRUSTOR, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.**</u>

The beneficiary, mortgage servicer, or agent of beneficiary or mortgage servicer declares that it has complied with California Civil Code Section 2923.5 and/or 2923.55, wherever applicable. The Declaration is attached.

Dated: **December 5, 2022**

By: **Carlos Quezada**
Foreclosure Associate
Affinia Default Services, LLC,
as Trustee for the Beneficiary

This communication is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you have received a discharge of the debt referenced herein in a bankruptcy proceeding, this is not an attempt to impose personal liability upon you for payment of that debt. In the event you have received a bankruptcy discharge, any action to enforce the debt will be taken against the property only.

File No: 22-04288CA

## CALIFORNIA DECLARATION OF COMPLIANCE
### (CAL. CIV. CODE § 2923.55)

| | |
|---|---|
| Borrower(s): | Scott  A Johnston |
| Property Address: | 240 Williams Avenue, Red Bluff, CA 96080 |
| Trustee's Sale No.: | 22-04288CA |

The undersigned, as an authorized agent or employee of the below mortgage servicer, declares as follows:

1. ☐  The mortgage servicer has contacted the borrower to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure as required by California Civil Code § 2923.55(b)(2). Thirty days have passed since the initial contact was made.

2. ☐  The mortgage servicer has tried with due diligence to contact the borrower as required by California Civil Code § 2923.55(f) but has not made contact despite such due diligence.  Thirty days have passed since these due diligence efforts were satisfied.

3. ☐  No contact was required because the individual did not meet the definition of "borrower" under California Civil Code § 2920.5(c).

4. ☒  The requirements of California Civil Code § 2923.55 do not apply because the loan is not secured by a first lien mortgage or deed of trust on "owner-occupied" or qualifying tenant-occupied residential real property as defined by California Civil Code § 2924.15.

Additionally, pursuant to California Civil Code § 3273.10:

1. ☐  The mortgage servicer has not denied the borrower a forbearance request made between 8/31/2020 and 12/1/2021.

2. ☐  The mortgage servicer was unable to approve the borrower's request for a forbearance request made between 8/31/2020 and 12/1/2021, and a forbearance was not subsequently provided.

3. ☐  The mortgage servicer was unable to approve the borrower's request for a forbearance made between 8/31/2020 and 12/1/2021, however, a forbearance was subsequently provided.

4. ☒  The requirements of California Civil Code § 3273.10 do not apply because the borrower was not current on payments as of 2/1/2020 in connection with a mortgage or deed of trust secured by residential property containing four dwelling units or less.

5. ☐  The mortgage servicer is in compliance with California Civil Code § 3273.10 because the mortgage servicer has complied with the relevant provisions regarding forbearance in Section 4022 of the federal Coronavirus Aid, Relief, and Economic Security Act (the CARES Act) (Public Law 116-136), including any amendments or revisions to those provisions, pursuant to California Civil Code § 3273.10(d).

I certify that this declaration is accurate, complete and supported by competent and reliable evidence which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

Specialized Loan Servicing LLC

Dated: __November 2, 2022__

By:  Cynthia Wallace
Its: Second Assistant Vice President

Version Dated 12.8.21

# EXHIBIT D

# EXHIBIT D

**Specialized Loan**
# Servicing
Part of the Computershare Group

6200 S. QUEBEC ST., STE. 300
GREENWOOD VILLAGE, CO 80111

📞 1-800-306-6062
📠 1-877-875-0981

⠿⠿⠿⠿⠿⠿⠿⠿⠿⠿⠿⠿⠿⠿⠿⠿⠿⠿⠿⠿⠿
SCOTT A JOHNSTON
240 WILLIAMS AVE
RED BLUFF, CA 96080

RE: Loan Number: 1010473165
Property Address:
240 WILLIAMS AVE
RED BLUFF, CA 96080

02/01/2023

Dear SCOTT A JOHNSTON,

Specialized Loan Servicing LLC ("SLS") has conducted a review of your application submitted for a mortgage relief option. Below is a list of the mortgage relief options you were evaluated for and the result of each.

Please see enclosed documentation for terms of the extended offer(s). Please see below for the timeline to accept any of the mortgage relief options that have been approved.

Please note, if you are currently in a bankruptcy proceeding, approval of any mortgage relief option for which you may be eligible is contingent on approval of the bankruptcy court in your bankruptcy case. If an Order is entered denying the mortgage relief option, that Order supersedes any agreement contained herein. If you have any questions or concerns regarding the process to obtain court approval, please contact your attorney.

## Results Summary

### Short Sale Program - Approved
- Recovery Cooperative Short Sale Program
  - To accept this offer, SLS requires the below documents returned to us by 02/21/2023

| SCOTT A JOHNSTON | How to accept |
|---|---|
| | |

**Specialized Loan Servicing**

Part of the Computershare Group
6200 S. Quebec St., Ste. 300, Greenwood Village, CO 80111


1-800-306-6062
1-877-875-0981

| Proof Of Listing | The following document(s) as applicable: |
|---|---|
| | • Listing Agreement<br>• Sales Contract<br>• Settlement Statement<br>• Short Negotiated Payoff Offer<br><br>The subject property must be listed for the minimum term required by your investor. |

**Home Retention Program - Denied**
- We were unable to qualify you for a Home Retention Option. Please see detail below in the "Results for programs that were denied".

**Deed-In-Lieu Program - Denied**
- We were unable to qualify you for a Deed-In-Lieu Option. Please see detail below in the "Results for programs that were denied".

\* If you choose to accept any offer above by performing the appropriate action then you will be entered into the corresponding mortgage relief option.

**Home Retention Program Results**

**Recovery Final Modification- Denied**

- The account is not eligible for this program because the Combined loan-to-value ratio is greater than or equal to?the 85% Combined loan-to-value ratio required?for this program

**Recovery Final Modification- Denied**

- The application was denied because we are unable to create any payment reduction without changing the terms of your loan beyond the requirements of the program

**Recovery Final Modification- Denied**

- The account was not eligible for this program because the loan has not matured or is not within 90 days of maturity



Specialized Loan

# Servicing

Part of the Computershare Group

6200 S. Quebec St., Ste. 300, Greenwood Village, CO 80111

1-800-306-6062
1-877-875-0981

**Deed-In-Lieu Program Results**

**Deed In Lieu- Denied**

• Your loan does not meet the eligibility requirements for this program as it is currently a 2nd lien

The creditor (owner) of the loan holds a subordinate lien security interest in the subject property.

**Specialized Loan**

# Servicing

Part of the Computershare Group
6200 S. Quebec St., Ste. 300, Greenwood Village, CO 80111

1-800-306-6062
1-877-875-0981

## Second Independent Review of Modification Denial

If the this is your first evaluation since the account was last current, you have the right to request a second independent review to determine your eligibility for a loan modification. To request a second review you must send us your request in writing which must be received by us no later than 03/09/2023. Please include a copy of this letter with your request including any supporting documentation. If this is your first evaluation since the account was last current, and your request is received within the disclosed timeframe, we will not initiate or continue with any scheduled foreclosure during the review. If we have offered you a home retention option and the result of your second independent review changes the offer and results in denial your loan will be enforced according to its original terms. This could include foreclosure. Your written request must either be mailed or faxed to us as follows:

| MAIL | FAX |
|------|-----|
| Specialized Loan Servicing LLC<br>P.O. Box 636005<br>Littleton, CO 80163 | 1-720-241-7218<br>(Page limit per transmission is 25 pages) |

ENCLOSURES:

• Legal Disclosures

The requirements for this evaluation were set forth and performed in accordance with the Pooling and Servicing Agreement between Specialized Loan Servicing LLC and Deutsche Bank National Trust Company, as Trustee, for IndyMac Home Equity Mortgage Loan Asset-Backed Trust, Series 2006-H1.

If you have questions concerning this letter or need further assistance, you may contact me or our Customer Resolution Department at 1-800-306-6059 Monday through Friday, 7:00 a.m. until 7:00 p.m. MT.

If you have other questions about mortgage relief options that cannot be answered by us, please call the Homeowner's HOPE™ Hotline at 1-888-995-HOPE (4673). This Hotline can help with questions about the program and offers access to free HUD-certified counseling services in English and Spanish.

Sincerely,

James, 13773
Customer Resolution Department
Specialized Loan Servicing LLC



Specialized Loan
**Servicing**

Part of the Computershare Group
6200 S. Quebec St., Ste. 300, Greenwood Village, CO 80111

1-800-306-6062
1-877-875-0981

**SPECIALIZED LOAN SERVICING LLC IS REQUIRED BY FEDERAL LAW TO ADVISE YOU THAT THIS COMMUNICATION IS FROM A DEBT COLLECTOR.**

**BANKRUPTCY NOTICE - IF YOU ARE A CUSTOMER IN BANKRUPTCY OR A CUSTOMER WHO HAS RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT: PLEASE BE ADVISED THAT THIS NOTICE IS TO INFORM YOU OF THE STATUS OF THE MORTGAGE SECURED BY THE SUBJECT PROPERTY. THIS NOTICE CONSTITUTES NEITHER A DEMAND FOR PAYMENT NOR A NOTICE OF PERSONAL LIABILITY TO ANY RECIPIENT HEREOF, WHO MIGHT HAVE RECEIVED A DISCHARGE OF SUCH DEBT IN ACCORDANCE WITH APPLICABLE BANKRUPTCY LAWS OR WHO MIGHT BE SUBJECT TO THE AUTOMATIC STAY OF SECTION 362 OF THE UNITED STATES BANKRUPTCY CODE. IF YOU RECEIVED A DISCHARGE OF THE DEBT IN BANKRUPTCY, WE ARE AWARE THAT YOU HAVE NO PERSONAL OBLIGATION TO REPAY THE DEBT. WE RETAIN THE RIGHT TO ENFORCE THE LIEN AGAINST THE COLLATERAL PROPERTY, WHICH HAS NOT BEEN DISCHARGED IN YOUR BANKRUPTCY, IF ALLOWED BY LAW AND/OR CONTRACT. IF YOU HAVE QUESTIONS, PLEASE CONTACT US AT 1-800-306-6057.**

**SUCCESSORS IN INTEREST - IF YOU ARE IN RECEIPT OF THIS COMMUNICATION PURSUANT TO YOUR STATUS AS A SUCCESSOR IN INTEREST TO THE SUBJECT PROPERTY, THIS NOTICE DOES NOT MAKE YOU LIABLE FOR THE MORTGAGE DEBT. UNLESS YOU ARE PERSONALLY LIABLE FOR OR HAVE ASSUMED THE MORTGAGE LOAN, YOU CANNOT BE REQUIRED TO USE YOUR ASSETS TO PAY THE MORTGAGE DEBT. THE LENDER HAS A SECURITY INTEREST IN THE PROPERTY AND A RIGHT TO FORECLOSE ON THE PROPERTY, WHEN PERMITTED BY LAW AND AUTHORIZED UNDER THE MORTGAGE LOAN CONTRACT.**

**Important Notice To Servicemembers And Their Dependents**
If you or any occupant of your home are or recently were on active duty or active service, you may be eligible for benefits and protections under the federal Servicemembers Civil Relief Act (SCRA). This includes protection from foreclosure or eviction. You may also be eligible for benefits and protections under state law or investor policy. SCRA and state Military benefits and protections also may be available if you are the dependent of an eligible Servicemember.

Eligible service may include:
- Active duty with the Army, Navy, Air Force, Marine Corps, or Coast Guard, or
- Active service as a commissioned officer of the National Oceanic and Atmospheric Administration, or
- Active service as a commissioned officer of the Public Health Service, or
- Service with the forces of a nation with which the United States is allied in a war or Military action, or
- Service with the National Guard of a state militia under a state call of duty, or
- Any period when you are absent from duty because of sickness, wounds, leave, or other lawful cause.

For more information, please call SLS at 1-800-306-6059.

**FCRA Disclosure**

Our credit decision was based in whole or in part on information obtained in a report from the consumer reporting agency listed below. You have a right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer reporting agencies. The reporting agency played no part in our decision and is unable to supply specific reasons why we have denied credit to you. You have a right to receive a free copy of your report from these reporting agencies, if you request it no later than 60 days after you receive this notice. In addition, if you find that any information contained in the report you receive is inaccurate or incomplete, you have the right to dispute the matter with the applicable reporting agency by contacting that agency at the number provided below:

    CoreLogic Credco, LLC
    P.O. Box 509124
    San Diego, CA 92150
    (800) 637-2422

Your credit score was requested from the consumer reporting agency, however, a credit score was not provided. To perform the Net Present Value evaluation, we used 557 as the proxy credit score, as required by modification program guidelines.

Your credit score: 557
Date: 02/01/2023

Scores range from a low of 280 to a high of 850.


**NOTICES OF ERROR AND REQUESTS FOR INFORMATION (INCLUDING QUALIFIED WRITTEN REQUESTS**
**MUST BE SUBMITTED IN WRITING TO: SPECIALIZED LOAN SERVICING LLC, P.O. BOX 630147, LITTLETO**
**CO 80163-0147**

## CERTIFICATE OF SERVICE

STATE OF CALIFORNIA                     )
COUNTY OF LOS ANGELES              )

     I am an employee in the County of Los Angeles and my place of business is in the aforesaid county; I am over the age of 18 years and not a party to the within entitled action; my business address is 21550 Oxnard St, Suite 110, Woodland Hills, CA 91367.

     On June 22, 2023 I served the foregoing documents described as:

### FIRST AMENDED COMPLAINT

On the interested parties in said case as follow:

### Served Electronically

### Via Court's CM/ECF System

Attorneys for Defendant, Specialized Loan Servicing, LLC
    Timothy M. Ryan, Bar No. 178059
    Andrew J. Mase, Bar No. 300680
    Chris S. Pacetti, Bar No. 231968
    THE RYAN FIRM
    A Professional Corporation
    2603 Main St, Suite 1225 Irvine, CA 92614
    Telephone (949) 263-1800; Fax (949) 872-2211

     I declare under penalty of perjury under the laws of State of California that the foregoing is true and correct.

     Executed on June 22, 2023 in Los Angeles, California.

_____
    Brieann Kovalevsky